UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | 4:15CR 404-8 |
| vs. | ) | |
| | ) | Hon. Henry E. Autrey |
| | ) | Hon. Nanette A. Baker |
| Velazquez, et al | ) | |

**REPLY TO RESPONSE TO MOTION TO RECONSIDER**

Comes now the undersigned attorney, Beau B. Brindley, on behalf of defendant DERRICK TERRY and replies to Attorney Dagrosa's response to his motion to reconsider.

1.      Having reviewed attorney Dagrosa's filing stylized as a reply[1] and consulted with Mr. Terry by telephone regarding the issues raised in that filing, the undersigned provides the following reply to Mr. D'agrosa's response.

2.      Mr. Dagrosa indicates that he learned of the undersigned's intent to visit Mr. Terry via a telephone conversation with Mr. Fagras.  This may well be true. However, the undersigned's office never contacted Mr. Fagras to advise him regarding the visit.  The undersigned's office contacted the US Marshals Service in an attempt to locate Mr. Terry.  When the US Marshals Service did not provide information about his housing location, the undersigned's office contacted the US Attorney's office.  Subsequent to that, Mr. Fagras unpromptedly contacted the undersigned's office and voiced his own concerns about the marshals' treatment of Mr. Terry and his own concern s bout Mr. Terry's whereabouts.  Mr. Fagras had

---

[1] Dagrosa's filing was responsive to the undersigned's motion to reconsider.  Therefore, the appropriate title would be response rather than reply.

1

apparently been advised regarding the undersigned's planned visit by some party other than the undersigned's office.  Hence, from the undersigned's perspective, it seemed unlikely that Mr. Fagras was the source of Mr. D'agrosa's information regarding the undersigned's planned visit to Mr. Terry.   Mr. Fargras was cooperative, helpful, and clearly looking out for Mr. Terry's interest.  Since Mr. Fagras is Mr. Terry's current counsel, he would have certainly filed a motion to limit visitation if he thought it in Mr. Terry's best interest.  The fact that he did not is instructive here. Perhaps Mr. Fagras called Mr. D'agrosa and advised him regarding the visit.  Perhaps not.  Either way, Mr. Fagras clearly did not, himself, maintain that Mr. Terry should be prevented from having in-person consultation with counsel of choice.  If he did, he would have filed a motion on Mr. Terry's behalf.

3.    It may be the case that Mr. D'agrosa did not consult with the government regarding this matter.  His filing does not definitively state whether or not he did.  However, in light of the circumstances, that possibility seemed quite plausible to the undersigned at the time he filed the motion to reconsider.  If there was no discussion between conflict counsel and the government, the undersigned is relieved.  However, he does ask that, when this matter is addressed on December 2, 2016, the Court inquire regarding whether there was, in fact, any discussion between conflict counsel and government counsel and that the specific content of that discussion be disclosed to the Court and Mr. Terry.

4.    Regardless of how Mr. D'agrosa came by the information that the undersigned planned to visit Mr. Terry, the limitation of in-person visitation with qualified counsel of choice is not premised on any identifiable law.  Neither Mr.

D'agrosa's original motion, nor his response brief, cite any actual authority for the proposition that an incarcerated defendant can be prevented from consulting with any attorney of his choosing who is qualified to enter the facility where he is housed. The reason Mr. D'agrosa cites no authority is because there is none.  Even an attorney who cannot represent a defendant due to a conflict of interest can, if the defendant wishes, *consult* with the defendant in person regarding various issues. Preventing such consultations and expressly limiting consultation to a single appointed attorney who is not the defendant'scexpress  counsel of choice violates the Sixth Amendment to the United States Constitution. The undersigned is aware of no authority whatsoever that permits such limitations on *consultation* with counsel. The relief asked for by Mr. D'agrosa should not have been sought as it is not permissible under any law identified by Mr. D'agrosa or known to the undersigned. A defendant cannot be barred from consulting with any attorneys of his choosing when he has an active criminal case.  If Mr. D'agrosa had authority to the contrary, he would have presumably cited it.  He did not.

4.      There is no dispute that Mr. D'agrosa did not consult with Mr. Terry before filing his motion.  Therefore, it was not filed on behalf of the defendant.  In fact, Mr. Terry has expressly asserted to the undersigned via telephone that he wants in person visitation with the undersigned and was upset that this motion was filed without his approval or consultation.

5.      Mr. D'agrosa was appointed as conflict-free counsel to advise Mr. Terry regarding the facts creating a potential or actual conflict of interest.  That is what conflict counsel does.  Conflict counsel advises a defendant on certain facts and

consequences created by a source of potential or actual conflict of interest.  This is done so the defendant can make an independent and informed decision about whether he wishes to waive any conflict of interest.  It is the Court and the Court alone that makes an independent legal assessment of the factual situation and evaluates the defendant's position on his desire to waive a potential or actual conflict of interest.  Conflict counsel is meant to be wholly neutral and not take any position on the matter either way.

6.      In his motion to limit visitation, Mr. D'agrosa wrote that he was appointed for the purpose "of discerning whether or not a conflict exists."  R. 666 at 1.  This is not the function of conflict counsel.  Conflict counsel is to advise the defendant on the facts and possible consequences of representation by counsel of choice and allow the defendant to make an informed decision about any issue regarding potential or actual conflict of interest.  The only body that should be discerning whether a potential or actual conflict exists as matter of law is the Court.  If conflict counsel believes he is appointed to make such a determination of law, his espoused view exceeds the role traditionally played by independently-appointed conflict counsel.

6.      In his response, Mr. D'agrosa states that he "acted diligently in gathering information, necessary to represent to this Court counsel's opinion with regard to the conflict and whether or not such a conflict can be waived."  R. 669 at 2.  Again, this is not the role of conflict counsel.  This Court can be presented with the facts and make its own determination of whether any potential or actual conflict exists.  The Court has the knowledge, wisdom, and authority to make that decision

4

without the unsolicited legal opinion of conflict counsel. The Court can hear from counsel of choice, the defendant, and the government regarding their various positions on the matter while taking into account the varying interests of each. The Court is more than capable of fashioning its own unbiased legal opinion after being presented with all of the facts.  It does not require an advisory legal opinion from any purportedly disinterested conflict counsel.  Such advisory legal opinions would be quite unusual in any federal court.  It is the undersigned's view that, with all due respect, the legal opinion of conflict counsel is wholly irrelevant.  Conflict counsel's purpose is to fully advise the defendant regarding the facts and possible consequences surrounding a potential or actual conflict of interest, and to let the Court make its own independent assessment of those facts and consequences after being fully advised of what they are.  Despite significant experience litigating conflict issues in federal criminal cases, the undersigned has never heard of conflict counsel submitting advisory legal opinions to the Court while purporting to be a neutral purveyor of fact and potential consequence to the defendant.

7.      Mr. Terry has had the facts surrounding the conflict issue explained to him by Mr. D'agrosa.  He has spoken to the undersigned and his associate regarding what these facts purportedly are.  He has expressed that he wishes to waive any conflict of interest that these facts create.  If his descriptions of the facts are accurate, then the potential conflict of interest is wholly speculative and certainly not sufficient to overawe a defendant's right to counsel of choice.  Where the right to counsel of choice conflicts with the right to an attorney of undivided loyalty, the choice as to which right is to take precedence must generally be left to the defendant and not be

5

dictated by the government. *See, e.g., United States v. Cunningham,* 672 F.2d 1064, 1073 (2nd Cir. 1982); *United States v. Perez,* 325 F.3d 115 (2nd Cir. 2003).

8. Only after determining that some actual or potential conflict of interest exists should the district court evaluate that conflict for its effect on the defendant's right to effective assistance of counsel. *Id*. Even where a potential or actual conflict of interest actually obtains, disqualification is not automatic. *United States v. Turner,* 594 F.3d 946, 948, 951 (7th Cir. 2010) (*citing, Rodriguez v. Chandler,* 382 F.3d 670, 672 (7th Cir. 2004). Therefore, even where an actual or potential conflict of interest exists, the district court must evaluate "(1) the likelihood that the conflict will actually occur; (2) the severity of the threat to counsel's effectiveness; and (3) whether there are alternative measures available other than disqualification that would protect the defendant's right to effective counsel while respecting his choice of counsel." *Turner,* 594 F.3d at 952.

9. The district court should conduct this analysis bearing in mind that "disqualification of defense counsel should be a measure of last resort, and 'the government bears a heavy burden of establishing that disqualification is justified.'" *United States v. Gearhart,* 576 F.3d 459 (7th Cir. 2009) (*quoting United States v. Diozzi,* 807 F.2d 10, 12 (1st Cir. 1986)). "[C]ourts will not 'assume too paternalistic an attitude in protecting the defendant from himself,' and although the defendant's choice of counsel 'may sometimes seem woefully foolish' to the court, the choice remains his." *United States v. Curcio,* 694 F.2d 14, 25 (2d Cir. 1982). *United States v. Perez,* 325 F.3d 115 (2nd Cir. 2003). In sum, the burden of establishing the necessity of disqualification is a heavy one and rests entirely upon the government. *Turner,* 594 F.3d at 951; *Rodriguez,* 382 F.3d at 672; *United States v. Gearhart,* 576 F.3d 459 (7th Cir. 2009).

10.     The necessity of disqualification cannot be established simply by asserting that the defendant may at some point in the future choose to cooperate against some other person with whom his counsel has a relationship.  In *United States vs. Turner*, defense counsel was disqualified from representing two defendants in related cases by the district court. The district court justified disqualification on the basis that one defendant might be asked to testify against the other. *Turner*, 594 F.3d at 948. The district court expressed a concern that the attorney could not "effectively advise one of his clients about the advantages of cooperating with the government without hurting the interests of his other client." *Id*. at 949. In that case the Seventh Circuit found that a potential conflict was simply too remote if it was based on the notion that "one or the other of his clients might change his mind about cooperating with the government." *Id*. at 953. The Seventh Circuit reasoned that such a possibility "inheres in almost every instance of multiple representation," and would therefore, essentially bar joint representation in violation of the Court's holding in *Cuyler v. Sulliava*, 446 U.S. 335, 348 (1980).  *Id*.  There is no identifiable contrary law in the Eight Circuit known to the undersigned.  Hence, based on what Mr. Terry has explained to the undersigned about what Mr. D'Agrosa has said regarding the conflict issue, disqualification in this circumstance would be inappropriate as is the seemingly unprecedented act of preventing in-person *consultation* with counsel of choice altogether.

11.     Mr. Terry has expressed to the undersigned frustration and disapproval with the motion filed by Mr. D'agrosa and the limitation of his ability to consult with his counsel of choice in person.   The undersigned shares in that frustration.    After considerable experience litigating potential conflict of interest issues in the district courts

in the Seventh and Eighth Circuits, the procedures advocated by Mr. D'Agrosa seem unduly broad, intrusive, and unsupported by existing law.  Mr. Terry maintains that these procedures violate his right to counsel of choice under the Sixth Amendment.

12.    Although these matters should be resolved at the Court appearance scheduled for December 2, 2016, the undersigned presents this filing to make sure that Mr. Terry's position is preserved for the record.

WHEREFORE, Mr. Terry moves this honorable Court to reconsider the order preventing in-person consultation with counsel of choice and to ultimately permit him to waive any potential conflict of interest at the hearing on that matter on December 2, 2016.

> Respectfully submitted,
> DERRICK TERRY
>
> By:    s/ Beau B Brindley

LAW OFFICES OF BEAU B. BRINDLEY
53 West Jackson Blvd.
Suite 1410
Chicago, Illinois 60604
312.765.8878